1
2
3
4
5

6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| WASTE ACTION PROJECT,<br><br>    Plaintiff,<br><br>  v.<br><br>BUCKLEY RECYCLE CENTER, INC., et al.,<br><br>    Defendants,<br><br>   and<br><br>KING COUNTY, a political subdivision of the State of Washington,<br><br>    Intervenor. | CASE NO. C13-1184 RSM<br><br>ORDER ON PENDING MOTIONS |

17

## I.   INTRODUCTION

18
19
20
21
22
23
24

On May 11, 2017, the Court entered a Consent Decree resolving this Clean Water Act ("CWA") case related to Defendants' operation of a plant materials processing business on a parcel of land within King County, Washington (the "Spencer Property"). Dkt. #143. The matter is now back before the Court as King County (the "County") seeks to reopen the case, intervene, and obtain permanent injunctive relief prohibiting Defendants' continued operation on the Spencer Property. Dkt. #144. The County maintains that Defendants' activities were at all times illegal under applicable County ordinances and that Defendants' continued operation is a public

ORDER – 1

nuisance that should be enjoined by this Court.  Based on the facts set forth in King County's motion, Plaintiff Waste Action Project ("WAP") has additionally joined with King County to seek modifications to the Court's Consent Decree.  Dkt. #146.  WAP and the County contend that Defendants have not satisfied their obligations under the Consent Decree and that the Consent Decree should be modified to require Defendants to take more immediate action.  Defendants oppose both motions, arguing that the County should not be allowed to intervene, that Defendants' ongoing disputes with the County are mischaracterized and exaggerated, that they have complied with the terms of the Consent Decree, and that the Consent Decree does not need to be modified.  Dkts. #147 and #156.  The Court held oral argument on the motions on October 27, 2020 and took the matter under advisement.  The Court now resolves the motions as follows.

## II.    BACKGROUND

This matter has a lengthy and somewhat tortured history that the Court must address in considering the motions before it.  However, the Court does not attempt to fully recount that history and does not always provide citations to the record.  The Court trusts that the parties are familiar with the facts and that the record supports the background set forth below.

### A.  WAP's Lawsuit, Enforcement of Settlement, and Eventual Consent Decree

WAP initiated this action to remedy alleged violations of the CWA and the Resource Conservation and Recovery Act ("RCRA") occurring on property located in Auburn, King County, Washington and owned by Defendant Jeffrey Spencer[1] (the "Spencer Property").  Dkt. #1.  At all relevant times, the Spencer Property was used by Defendant Buckley Recycle

---

[1] The property is now owned by Mr. Spencer's estate.  Mr. Spencer's estate, and Mr. Spencer before he passed away, have had limited involvement in this matter.  Here, the Spencer estate simply joins the Buckley Recycle Center, Inc. Defendants in their responses to the pending motions. Dkt. #154.

ORDER – 2

Center, Inc. ("BRC"), a materials processing business that was operated principally by Defendants Ronald Shear and Ronda Sterley (together with BRC, the "BRC Defendants"). According to the amended complaint the materials processing business involved "industrial activities, including recycling, hog fuel production, materials transfer, dumping, and/or composting, and support[ing] activities." Dkt. #40 at ¶ 22. WAP alleged that BRC Defendants' piles of compost and other organic material stored on the Spencer Property, as well as the wheel wash facilities and other structures, resulted in contamination of wastewater and stormwater. *See generally id.* at ¶¶ 20–30. The contaminated water, WAP alleged, was then discharged to waters of the United States in violation of the general industrial stormwater permit under which BRC operated. *Id.*

After some preliminary skirmishes the parties employed the assistance of a mediator, reached a settlement, and executed a Settlement Terms Sheet on April 9, 2015. Dkt. #74 at 4–7. But three months later, BRC Defendants had still not finalized the settlement and WAP requested that the Court enforce the settlement agreement. Dkt. #73. The Court denied the motion and directed the parties to continue working toward a finalized settlement. Dkt. #80. A month later, WAP again sought sanctions because of BRC Defendants' continued delay in executing a final consent decree. Dkt. #82. The Court granted the motion in part and ultimately awarded WAP $4,604.00 in attorneys' fees. Dkts. #89 and #97.

In July 2016, more than a year after the parties agreed to settlement terms, the parties were again before the Court on WAP's motion to enforce the settlement and for sanctions. Dkt. #102. The Court found that BRC Defendants lacked good cause for further delay and that they were attempting to renegotiate agreed upon terms and sent the parties back to mediation. Dkt. #108 at 4 (noting that the parties continued to need the Court's intervention, "wasting everyone's time and resources for a matter that was purportedly settled more than a year ago").

ORDER – 3

A third motion to enforce the settlement agreement followed. Dkt. #115. This time, the Court granted WAP's motion, finding that the Settlement Terms Sheet was an enforceable agreement and that Defendants had materially breached the terms of that agreement. Dkt. #126.

To provide meaningful relief, the Court modified the terms of the settlement and ordered BRC Defendants to comply with those modified terms. *Id.* As modified, the general terms of the agreement were that BRC Defendants would: (1) pay $183,250 within 45 days of the Court's order; (2) vacate operations from a 2.5 acre portion of the Spencer Property and a 25 foot strip along the westernmost property line and replant the vacated areas within 45 days of the Court's order; (3) vacate operations and remove all equipment from the western half of the property within two years of the Court's order; (4) vacate operations and remove all equipment from the site within four years of the Court's order; and (5) provide WAP copies of all correspondence with King County['s]" permitting department and the Department of Ecology related to the Spencer Property. *Id.* at 7–8. BRC Defendants did not accept the Court's order and instead appealed the Court's ruling on the basis that the Settlement Terms were not an enforceable agreement under Washington law. Dkt. #133. However, before the appeal was resolved, the parties came to an agreement and the case was remanded "so that the parties [could] seek entry of an agreed consent decree." Dkt. #138. Finally, on May 11, 2017, the Court entered an agreed consent decree (the "Consent Decree"). Dkt. #143.

A central premise upon which the Consent Decree was formulated was that BRC Defendants would relocate to a new property. As noted in the Consent Decree, "BRC [had] closed on the acquisition of a new site for BRC's operations and [had] entered into a pre-application process" for the necessary permits from King County. *Id.* at 2. As the Court understands, this referred to a property in Enumclaw, Washington (the "Enumclaw Property"). Under the Consent Decree, BRC Defendants agreed to "employ their best efforts to submit a

ORDER – 4

complete and adequate application" for all King County permit approvals for the Enumclaw

Property and to "otherwise employ their best efforts to obtain the final Occupancy Permit for"

the Enumclaw Property. *Id.* at 4. BRC Defendants agreed that throughout the process they would

"forward copies of all written communications between the BRC Defendants and the Washington

Department of Ecology and/or King County [] Permitting." *Id.* at 6.

The Consent Decree also required that BRC Defendants begin wrapping up operations at

the Spencer Property. Operations and materials were to be removed from 2.5 acres of the Spencer

Property within approximately five months and, after permits were approved for operations on

the Enumclaw Property, then the remainder of the Spencer Property was to be cleared at a rate

of one acre every six months. *Id.* at 4–5. Due to the size of BRC Defendants' operations on the

Spencer Property, the Consent Decree anticipated that the Spencer Property would be vacated

within three years and nine months of the Enumclaw Property being fully permitted. For those

portions of the Spencer Property where Defendants no longer operated, they were to return the

land to native vegetation. *Id.* at 5.

**B. BRC Defendants' History of Operation in Violation of the King County Code**

Largely unbeknownst to the Court, BRC Defendants have had a long and contentious

relationship with the County. As early as 2005, the County brought an enforcement action

against BRC Defendants on the basis that they were operating without a required permit and had

performed illegal grading in critical areas on the Spencer Property. *King Cnty., Dep't of Dev. &*

*Envtl. Servs. v. King Cnty.*, 177 Wash.2d 636, 640, 305 P.3d 240, 242 (2013). Mr. Spencer and

BRC Defendants contested the enforcement action, arguing that BRC began operating before

code amendments required permits for their activities and that their operations were therefore a

ORDER – 5

lawful nonconforming use.[2]  The enforcement action ended up before the Washington State Supreme Court which determined that BRC's relevant use of the Spencer Property did not begin until BRC began processing materials on the property and that the use therefore did not qualify as a legal non-conforming use. *Id.* at 647.  With this outcome, BRC's unpermitted grading and use of the property to operate a materials processing business were determined to be unlawful under the King County Code.

Following the Washington State Supreme Court's decision, the matter was remanded back to King County so that BRC Defendants could obtain the permits necessary for its operation on the Spencer Property. Dkt. #144-2 at 46–47.  In the course of remand, the King County Hearing Examiner ordered that if BRC Defendants

> failed to meet a mandatory deadline, the proposal is denied or [King County Permitting[3]] formally determines that it has become legally infeasible and such denial or determination is not timely appealed . . . [King County Permitting] may issue to the [BRC Defendants] a written notice that any existing materials processing operations are to be terminated on the site within 60 days and specify the terms for bringing the site into code compliance.

*Id.* at 47.  King County Permitting subsequently determined that code requirements prohibited a materials processing facility, such as BRC's, from operating on the Spencer Property and issued a Notification to Cease Operations on December 11, 2017. *Id.* at 50–60, 62–64.  After further discussions, however, the County agreed to allow BRC Defendants time to wind down operations

---

[2] "Generally, a nonconforming use is a use that 'lawfully existed' prior to a change in regulation. Despite that the use may no longer be permitted [under the amended regulations], it is allowed to continue due to the fairness and due process concerns of the landowner." *King Cnty., Dep't of Dev. & Envtl. Servs.*, 177 Wash.2d at 643 (citing *Rhod–A–Zalea & 35th, Inc. v. Snohomish Cnty.*, 136 Wash.2d 1, 6, 959 P.2d 1024 (1998)).

[3] The division or department responsible for permitting within King County has changed several times during the lengthy pendency of this action.  As a more generic reference, the Court refers to the applicable permitting authority as "King County Permitting."

ORDER – 6

on the Spencer Property.  Specifically, BRC Defendants agreed to reduce the volume of plant material stored on the Spencer Property and agreed to several operational changes to reduce impacts on surrounding properties.  But King County no longer believes that BRC Defendants are accomplishing their promise to reduce the plant material stored on the Spencer Property and, in March 2020, once again ordered BRC Defendants to cease operations.  Dkt. #144-4 at 2–20.

## C.  BRC Defendants' Efforts to Obtain Permits for the Enumclaw Property

While the County and BRC Defendants have been fighting over BRC's operations on the Spencer Property, BRC Defendants have also been seeking to move operations to the new Enumclaw site.[4]  BRC Defendants submitted an initial permit application to King County Permitting on August 15, 2017.  Dkt. #152-2.  King County reviewed the initial submission, determined that there were various deficiencies and unaddressed code requirements and advised BRC Defendants of the need for additional information and revisions to the existing permit application.  Dkt. #146-1 at 19–34.  After being granted several extensions, BRC Defendants resubmitted application materials on May 31, 2018.  Dkt. #153.  However, the County's review again indicated a need for BRC Defendants to submit additional materials, including some that had already been brought to BRC Defendants' attention.  In a May 10, 2019 letter, the County identified deficiencies in the resubmitted application and gave BRC Defendants until July 10, 2019 to submit the necessary materials and revisions.  Dkt. #150 at 5–10.  BRC Defendants again obtained several extensions of their original July 10, 2019 deadline before ultimately informing the County, on February 24, 2020, that they planned to proceed on a revised development plan.

---

[4] Prior to pursuing the Enumclaw site, BRC Defendants considered a site in Covington, Washington.  However, they abandoned that site when it became clear that costly traffic improvements would be required.  See Dkt. #151 at ¶ 18 (Defendant Shear indicating that they walked away from the Covington property because it became clear that the County was going to require road improvements that would be an "awfully expensive undertaking" and further permitting decisions remained).

ORDER – 7

1    Dkt. #144-2 at 22–25.  The County indicated that proceeding with a new development plan would

2    require a substantially new application.  *Id.*  In essence, BRC Defendants began the permitting

3    process anew.  As the County aptly summarizes, after three years BRC Defendants "do not have

4    a concrete plan or proposal submitted to King County for its Enumclaw site."  Dkt. #144 at 5.

5        **D. BRC Defendants' Code Violation on the Enumclaw Property**

6        BRC Defendants have also found themselves at odds with the County over work

7    undertaken on the Enumclaw Property.  Purportedly in the process of necessary site planning to

8    proceed with their application, BRC Defendants cleared portions of the property in violation of

9    the King County Code.  The County issued a stop work order halting any clearing activities on

10   January 14, 2019.  Dkt. #144-9 at 2–5.  That stop work order required that BRC Defendants

11   obtain the necessary permits for the clearing activities they planned and for the remediation of

12   areas cleared without permits.  *Id.*  BRC Defendants appealed the stop work order on two defense

13   theories and sought a hearing before the County's Hearing Examiner.  Dkt. #144-9 at 7–18.  After

14   numerous continuances, to allow settlement negotiations, BRC Defendants raised entirely new

15   defenses and proceeded to hearing.  *Id.*  The Hearing Examiner resolved the issue on March 26,

16   2020, finding BRC Defendants' arguments dubious, at best, and concluding that the County

17   correctly issued a stop work order for unlawful clearing on the Enumclaw Property.  *Id.*

18        **III.        DISCUSSION**

19       **A. King County's Motion to Intervene**

20       King County explains its motion on the basis that the "[s]pecific terms of the [Consent]

21   Decree sanction the indefinite continuation of an illegal operation by the BRC [D]efendants of

22   their material processing facility in Auburn, King County, Washington, in direct violation of a

23   2013 Washington Supreme Court ruling and local land use determinations."  Dkt. #144 at 2

24   (citations omitted).  Accordingly, King County seeks intervention to "clarify and correct material

ORDER – 8

1    deficiencies and inaccuracies in the record before this Court relevant to the facts underlying

2    BRC's [illegal Auburn] operation and longstanding unpermitted status, and to obtain relief

3    necessary for the County to protect the public interest in preventing [BRC Defendants] from

4    continuing their illegal operation." *Id.* at 1–2 (emphasis omitted).  Such relief must come from

5    this Court, the County argues, because it requires modification of the Consent Decree and "[a]

6    state court cannot provide King County with such relief." *Id.* at 3.

7    **1. Legal Standard**

8    King County asserts that Federal Rule of Civil Procedure 24(b)(2) provides an

9    appropriate basis for it to intervene.  That rule provides:

> On timely motion, the court may permit a federal or state governmental officer or
> agency to intervene if a party's claim or defense is based on: (A) a statute or
> executive order administered by the officer or agency; or (B) any regulation,
> order, requirement, or agreement issued or made under the statute or executive
> order.

13    FED. R. CIV. P. 24(b)(2).  Intervention under Rule 24(b)(2) is permissive.  *C.f.* FED. R. CIV. P.

14    24(a) (addressing intervention of right).  District courts have the discretion to "grant permissive

15    intervention where the applicant for intervention shows (1) independent grounds for jurisdiction;

16    (2) the motion is timely; and (3)" the specific requirements of subsection (b) are satisfied.  *See*

17    *Donnelly v. Glickman*, 159 F.3d 405, 411–12 (9th Cir. 1998) (citing *Nw. Forest Res. Council v.*

18    *Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)).  Rule 24 provides courts wide discretion and courts

19    are guided primarily by practical and equitable considerations.  *See Arakaki v. Cayetano*, 324

20    F.3d 1078, 1083 (9th Cir. 2003) (citations omitted).

21    **2. King County Does Not Establish That Intervention is Proper**

22    The Court notes first that King County fails to adequately address the legal considerations

23    applicable to its motion.  King County does not adequately address a basis for invoking this

24    Court's subject matter jurisdiction, whether the applicable requirements of Rule 24(b)(2) are

satisfied, or whether its motion is timely. Even assuming an appropriate basis for allowing

intervention, King County fails to establish that intervention should be granted in this case. The

Court concludes that King County's motion should be denied.

The Court finds King County's jurisdictional argument overly conclusive and entirely

confusing. *See* Dkt. #155 at 4 ("All test elements for permissive intervention under FRCP

24(b)(2) are met in this case. Thus, Defendants' arguments to the contrary at page 8, lines 13–

28 should be deemed by this Court to be a dispositive rebuttal by the County."). King County's

argument appears to be that the Court already had jurisdiction to enter the Consent Decree and

necessarily has the authority to hear King County on its desired changes to the Consent Decree.

*See id.* at 4–6 (arguing that the Court retained subject matter and personal jurisdiction to enforce

the Consent Decree). King County is correct that the Court retained jurisdiction, but that was to

permit parties to seek further relief from the Court. Dkt. #143 at 7 (pursuant to section 10, the

Court retains jurisdiction "for the purpose of enabling the *parties*" to seek further relief from the

Court for disputes arising out of the Consent Decree) (emphasis added). Putting aside that King

County was not a party to the Consent Decree, King County is seeking to enforce provisions of

the King County Code—not the Consent Decree—and the pertinent question is whether there is

a separate basis upon which the Court may hear the matter. King County provides no authority

demonstrating that is the case.[5]

---

[5] King County attempts to tie the action to this Court's federal question jurisdiction by way of the assistance the County provides the federal government under Federal Emergency Management Agency statutes and regulations related to floodway mapping. Dkt. #144 at 3. But these statutes are not implicated in this matter and King County notes and concedes that "only FEMA . . . can determine that the property is not in the FEMA floodway." *Id.* (citing *Klineburger v. Wash. State Dept. of Ecology*, 4 Wash. App. 2d 1077 (2018) (unpublished)). King County falls well short of establishing federal question jurisdiction. *See K2 America Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011) (case arises under federal law where well-pleaded complaint establishes "that federal law creates the cause of action" or that relief depends on resolution of a "substantial question of federal law").

ORDER – 10

1          King County also fails to establish that if satisfies the requirements for intervention under

2     Rule 24(b)(2).  Rule 24(b)(2)'s terms permit intervention by a "federal or state governmental

3     officer or agency," and where claims or defenses touch on "a statute or executive order

4     administered by the officer or agency" or "a regulation, order, requirement, or agreement issued

5     or made under the statute or executive order."  FED. R. CIV. P. 24(b)(2)(A)–(B).  King County

6     does not establish that it qualifies as a "state governmental . . . agency" for purposes of the rule.

7     Nor does King County point to a statute it administers as forming the basis for any party's claims

8     or defenses.    At best, King County points to Federal Emergency Management Agency

9     requirements that the County complete floodway mapping and the fact that the Spencer Property

10    is located within a floodway.  Dkt. #144 at 3–4.  But King County does not tie the statute to the

11    claims and defenses at issue in this proceeding or establish that it is the "federal or state

12    governmental . . . agency" administering the referenced statutes.

13         Finally, King County fails to establish that it sought to intervene in a timely manner.  King

14    County attempts to argue that its motion is timely because it follows recent factual developments

15    at the Enumclaw site—distinct from the Spencer Property at issue in this case—and an indication

16    from BRC Defendants that they intend to continue operating on the Spencer Property.  Dkt. #155

17    at 6.  The Court does not agree and finds that timeliness is a dispositive basis upon which to deny

18    King County's motion.  This action began in 2013.  King County maintains that the Washington

19    State Supreme Court determined that BRC Defendants' operations were illegal in 2013 and that

20    the ensuing administrative action became final at least by August 1, 2014.  Dkt. #144 at 7–11.

21    The Consent Decree, which King County maintains must be modified,[6] was entered on May 11,

22

23    _____

      [6] King County makes much of its conclusion that this Court's 2017 Consent Decree superseded
24    earlier state court proceedings and somehow authorized Defendants to operate in violation of
      state and local laws.  Dkt. #144 at 2 (King County seeks to "challenge the validity of certain
      provisions of this federal court's Consent Decree" because they "sanction the indefinite

ORDER – 11

1

2017.  Dkt. #143.  King County was aware of the ongoing action and the likely outcomes of the

2

action.  Dkt. #144-8 at 2.  Yet King County provides no justification for its failure to seek

3

intervention before entry of the consent decree or in the three years thereafter.  "[W]aiting until

4

after entry of a consent decree weighs heavily against intervention.  *United States v. Oregon*, 913

5

F.2d 576, 588 (9th Cir. 1990) (citations omitted).

6

### 3.  The Court Will Not Otherwise Grant Intervention

7

King County is left to argue that equity requires the Court to allow its intervention.  But

8

the Court finds it inappropriate to allow King County to intervene in this action.  The County

9

seeks intervention in pursuit of injunctive relief, maintaining that the Court is obligated to give

10

11

_____

12

continuation of an illegal operation by the BRC [D]efendants of their materials processing facility in Auburn, King County, Washington, in direct violation of a 2013 Washington State Supreme Court ruling and local land use determinations").  The Court does not draw the same conclusion.

13

14

This is a Clean Water Act case.  WAP alleged that Defendants violated the CWA because of unpermitted discharges on the Spencer Property.  *See generally* Dkt. #40.  The parties agreed,

15

between themselves, that BRC Defendants would remedy any such violations by ceasing operations at the site of their alleged violations.  *See Rouser v. White*, 825 F.3d 1076, 1081 (9th

16

Cir. 2016) ("Without question courts treat consent decrees as contracts that have the additional element of judicial approbation.") (citations omitted).  The Court entered a consent decree

17

memorializing that agreement.  In doing so, the Court considered whether the agreement was "fair, reasonable, and equitable and does not violate the law or public policy" and whether it

18

"[came] within the general scope of the case made by the pleadings, furthers the objectives upon which the law is based, and does not violate the statute upon which the complaint was based."

19

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004, 1008–09 (D. Haw. 2011), *aff'd*, 672 F.3d 1160 (9th Cir. 2012) (citing *Sierra Club v. Elec. Controls Design,*

20

*Inc.*, 909 F.2d 1350, 1355 (9th Cir.1990); *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir.1995); and *Hawaii's Thousand Friends, Life of Land, Inc. v. Honolulu*,

21

149 F.R.D. 614, 616 (D.Haw.1993)).  Compliance with local land use laws was not an issue before the Court and the Court was not required to consider whether BRC's operations were

22

lawful under every provision of federal, state, and local law.  The Court considered whether the plan to abate the alleged CWA violations was in the public interest and agreed to continue

23

enforcing the parties' agreement.  *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) ("A consent decree is 'essentially a settlement agreement subject to continued judicial

24

policing.'") (quoting *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983)).  The Court does not read anything in the Consent Decree as authorizing BRC Defendants to operate in a manner that otherwise violates federal, state, or local law.

ORDER – 12

1    the 2013 Washington State Supreme Court decision preclusive effect, in accordance with

2    principles of res judicata and collateral estoppel, and that the Court should issue an injunction

3    prohibiting BRC's continued operation on the Spencer Property.  Dkt. #155 at 2–3 (citing *Allen*

4    *v. McCurry*, 449 U.S. 90, 95–96 (1980)).  But the doctrines of res judicata and collateral estoppel

5    are clearly not applicable as compliance with local land use law was never before the Court.  *See*

6    *Clark v. Baines*, 150 Wash. 2d 905, 913, 84 P.3d 245, 249 (2004) (collateral estoppel requires

7    (1) an identical issue decided in a prior adjudication, (2) a final judgment, (3) privity, and (4) no

8    injustice served by application of the doctrine); *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d

9    985, 987 (9th Cir. 2005) (res judicata requires (1) same claim or cause of action, (2) final

10   judgment, and (3) privity).  Rather, the request is more akin to a request to enforce a state court

11   judgment.

12        "[F]ederal courts are not appendages of the state courts [and] cannot enforce a state-court

13   judgment without first independently establishing its own jurisdiction over the subject matter and

14   the parties."  *Threlkeld v. Tucker*, 496 F.2d 1101, 1104 (9th Cir. 1974) (citations omitted); 28

15   U.S.C. § 1963 (withholding authority for district courts to register judgments of state courts);

16   *Marbury Law Grp., PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C.2010) ("this Court lacks

17   jurisdiction to enforce state court judgments"); *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1067

18   (D. Ariz. 2015) (citing *Marbury*).  "The federal courts should not step in to enforce state court

19   judgments because a federal [p]laintiff wants to speed up or delay state court proceedings."

20   *Johnson v. Fitial*, No. 1:09-CV-000023, 2012 WL 12542689, at *5 (D. N. Mar. I. Sept. 26, 2012)

21   (citing *SKS & Associates, Inc. v. Dart*, 619 F. 3d. 674 (2010)).  To do so would implicate

22   "principles of equity, comity, and federalism" and "would reflect a lack of respect for the state's

23   ability to resolve the cases properly before its courts."  *SKS & Associates*, 619 F. 3d. at 679.  King

24   County's issues are properly brought before a state court.

1    **B.  Joint Motion to Modify Consent Decree**

2            King County also joins WAP to seek modification of the Consent Decree in light of BRC

3    Defendants' subsequent actions and continued operation on the Spencer Property.  The Consent

4    Decree requires that the "BRC Defendants [] employ their best efforts to submit a complete and

5    adequate application as soon as possible to [King County Permitting] for the necessary permits

6    to construct and operate a replacement facility on a new site."  Dkt. #143 at 4–5.  WAP and King

7    County argue that BRC Defendants have not utilized their best efforts to relocate to the

8    Enumclaw site and focus primarily on BRC Defendants' failure to remedy deficiencies identified

9    in their permit application and their illegal clearing on the Enumclaw Property.  For their part,

10   BRC Defendants contend that the County is responsible for any delays in permitting and that the

11   clearing violation is insignificant.  Dkt. #156 at 5, 7–8.  They argue that the County and WAP

12   merely seek to drive them out of business and that vacation and remediation of the Spencer

13   Property can only occur if they are allowed to continue operating on the site.  *Id.* at 8–9.  On this

14   record, the Court concludes that BRC Defendants have not utilized their best efforts to submit a

15   complete and adequate application and that the Consent Decree should be modified.

16       **1.  Legal Standard**

17           The Federal Rules of Civil Procedure provide ample authority for the modification of a

18   consent decree.  *See* FED. R. CIV. P. 60(b)(5)–(6) (final judgment or order may be altered where

19   "apply[ing] it prospectively is no longer equitable" or where "any other reason [] justifies relief").

20   Furthermore, courts have an equitable ability to modify the terms of a consent decree.  *See Keith*

21   *v. Volpe*, 784 F.2d 1457, 1461 (9th Cir. 1986) ("[E]ven in the absence of express authorization

22   in the decree or request from the parties, the power to modify in appropriate circumstances is

23   inherent in the equity jurisdiction of the court.") (citation omitted).  Modification is especially

24   appropriate "where a better appreciation of the facts in light of experience indicates that the

ORDER – 14

1   decree is not properly adapted to accomplishing its purposes." *Id.* at 1460 (quoting *King-Seeley*

2   *Thermos Co. v. Aladdin Industries*, 418 F.2d 31, 35 (2d Cir. 1969)) (quotation marks omitted).

3         **2. BRC Defendants' Failure to Correct Specific Application Deficiencies**

4         The most obvious starting point is to note that BRC Defendants have not secured *any* of

5   the necessary permits for developing the Enumclaw Property since they first applied on August

6   15, 2017.  BRC Defendants are certainly correct that some of the delay can be attributed to King

7   County which necessarily must review voluminous filings for compliance with applicable laws.

8   However, the fact remains that King County identified specific deficiencies in BRC Defendants'

9   permit applications and BRC Defendants have chosen not to address those deficiencies with

10  supplemental materials or argue that their initial submission complied with the requirements of

11  the King County Code.

12        Most indicative of BRC Defendants' failure to utilize "best efforts" is their failure to

13  modify their initial submission to address identified deficiencies under the King County Surface

14  Water Design Manual (SWDM).  In response to BRC Defendants' first submission, King County

15  provided ten pages of guidance to address approximately seventy identified deficiencies.  Dkt.

16  #146-1 at 22–32.  Nevertheless, BRC Defendants' resubmissions failed to adequately address the

17  requirements of the SWDM.  *Id.* at 55 ("[I]t is clear that the current proposed design for the site,

18  as shown on 5/31/2018 plan set discussed in the 5/31/2018 TIR, doesn't comply with some of

19  the SWDM requirements."); *id.* at 59 ("There are a number of [prior] review comments . . . that

20  have not yet been resolved or were only partially addressed.").  As WAP and King County put

21  it: "continual failure to provide information required for [King County Permitting] to properly

22  process their permit application, demonstrates that these defendants were not using *best* efforts

23  to facilitate the most efficient processing of their application possible by King County

24  Permitting."  Dkt. #146 at 9 (emphasis in original).

ORDER – 15

1    BRC Defendants' response is to blame King County for having identified too many

2    deficiencies in their permit applications.  Dkt. #151 at ¶ 32 (recounting BRC's frustration and

3    disappointment that the "County was picking apart everything [BRC] submitted").  As told by

4    BRC Defendants, the County "has taken a very simple, environmentally friendly, and necessary

5    business on a commercial agriculture property of 9.7 acres and with their requirements and

6    setbacks, drainage requirements, noise requirements, traffic impact requirements, made it

7    impossible to fit on a 102 acre site." *Id.* at ¶ 33.  BRC Defendants do not, however, attempt to

8    demonstrate that the project has been made "impossible."   Further, the argument wholly

9    overlooks the fact that BRC's existing operation on a 9.7-acre parcel is not permitted and does

10   not comply with the King County Code.

11   Notably, BRC Defendants do not assert, for instance, that any of the identified

12   deficiencies (1) lacked a legal basis, (2) were incorrect, or (3) have been inconsistently applied.

13   In fact, BRC Defendants offer testimony of Mr. Frank White, ostensibly as an expert in

14   permitting under the King County Code, that implies just the opposite.  Mr. White testifies that

15   he examined the County's guidance "to determine first if [it] had code authority" supporting its

16   requested corrections.  Dkt. #150 at ¶ 8.  But Mr. White does not identify or testify about *any*

17   code authority issues and concludes only that he has "never before seen a permitting official"

18   identify so many deficiencies. *Id.* at ¶ 9.  That Mr. White, had he been responsible for reviewing

19   the application, may have chosen to overlook some of the deficiencies does not provide any basis

20   upon which BRC Defendants should be excused from complying with the requirements of the

21   King County Code.[7]  Despite the numerous deficiencies identified for BRC Defendants in May

22

23   _____

[7] Similarly, Mr. White's testimony does not demonstrate impropriety because King County
required BRC Defendants to identify and delineate a wetland that was discovered on the site.
24   Defendant Shear indicates that "no wetlands on the property [] impact the development . . . [as
BRC Defendants] are not developing that part." Dkt. #151 at ¶ 41.  Mr. White does not assert

ORDER – 16

2019, they have not submitted any additional application materials since their last submission in May 2018.

### 3. BRC Defendants' Illegal Clearing and Enforcement Action

WAP and the County also argue that BRC Defendants' unlawful clearing on the Enumclaw Property precludes a finding that they have employed their "best efforts" under the Consent Decree. This unpermitted clearing, they argue, jeopardizes BRC Defendants' ability to obtain a permit from the County for the Enumclaw Property. Dkt. #146 at 3 (citing King County Code § 23.24.100)). They argue further that instead of submitting the necessary permit application to remedy the violation, BRC Defendants appealed the stop work order, asserting baseless defenses and ultimately delaying resolution for fourteen months. *Id.* at 3–6.

BRC Defendants do not dispute that unpermitted work was performed or that their defenses to the stop work order were unsupported by evidence. Rather, they attempt to reframe the violation as "an effort to try and accelerate the development process." Dkt. #156 at 2. But this argument fails because the record makes clear that BRC Defendants knew of the need for grading permits prior to most clearing activities. *King Cnty., Dep't of Dev. & Envtl. Servs.*, 305 P.3d at 242 (noting violations before the court were for operation without a permit and grading without a permit); *see generally* Dkt. #153 (2018 application materials including application for grading permit). BRC Defendants then claim that the violation does not preclude their "best efforts" because the violation did not delay processing of their permit application. But no real progress on the permit application has occurred since May 2019 when the County provided review comments that BRC Defendants have not addressed. While BRC Defendants tout their regular contact with the County regarding permitting issues on the site in an effort to demonstrate

---

that King County acted outside its code authority or that BRC Defendants' "intent" not to touch those areas excuses them from compliance with the applicable legal requirements.

ORDER – 17

their "best efforts," the record provides no indication that BRC Defendants ever asked whether a permit was required for their clearing activities or received any relevant representations from the County. BRC Defendants were simply uninterested in obtaining the necessary permits.

### 4. BRC Defendants' Additional Violation of the Consent Decree

BRC Defendants also violated the Court's requirement that they provide WAP notice of any communications with the County, compounding the negative impacts of their other actions. Dkt. #143 at 5. Under the Consent Decree BRC Defendants were to "forward copies of all written communications between the BRC Defendants and . . . King County [Permitting] related to the Spencer Property to Waste Action Project . . . within seven days of the communication." *Id.* There is no dispute that BRC Defendants have failed to fulfill this obligation and they instead argue that the violation was harmless. However, their failure to keep WAP apprised of their ongoing communications with the County foreclosed WAP from seeking more timely relief from this Court as the permitting process dragged on. Assuming that WAP was alerted to the ongoing activities only when the County filed its motion to intervene, WAP acted quickly and sought appropriate relief from this Court in just three weeks. While an appropriate remedy is not clear, the violation certainly supports the Court's conclusion that BRC Defendants did not employ their best efforts to comply with the Consent Decree.

### 5. Appropriate Remedy

WAP and King County request that the Court alter the Consent Decree to require that BRC Defendants begin winding down operations and begin vacating and restoring the Spencer Property as of the date of this order instead of the date on which BRC Defendants are issued a certificate of occupancy for a new site:

> Movants WAP and King County submit that Defendants have egregiously violated the requirements of paragraphs 7.c. and f. of the Consent Decree and request relief:

ORDER – 18

1.  An order holding that Defendants have violated the Consent Decree;

2.  An order modifying the Consent Decree and requiring Defendants to vacate operations and remove materials from the Spencer Property in accordance with paragraphs 7.d., e., and f. by replacing "Occupancy Date" (para. 7.d.) with the date of the Court's order;

Dkt. #146 at 11.  BRC Defendants do not contest the form of the remedy and the Court finds the request to be eminently reasonable.  This relief does not unfairly punish BRC Defendants as they have already enjoyed the benefit of operating on the Spencer Property since the Consent Decree was entered.  This relief does, however, recognize the reality that more than three years have passed with BRC Defendants being no closer to complying with their obligations under the Consent Decree.

Additionally, the Court finds it appropriate to address King County's concern that another court may interpret the Consent Decree as authorizing BRC Defendants' continued operation in violation of state law.  During oral argument, the Court inquired whether King County's concerns would be adequately addressed by the Court specifying that the Consent Decree does not authorize BRC Defendants to operate in violation of any applicable state or local laws.  The County agreed that the solution would alleviate its concerns.  BRC Defendants did not voice any objection to the alteration.  Accordingly, the Court alters paragraph 3 of the Consent Decree by adding a new sentence: "Nothing in this Consent Decree should be interpreted as authorizing BRC Defendants to operate in violation of any federal, state, or local laws."

### 6.  Attorneys' Fees

Lastly, WAP and King County request that the Court "award [] plaintiff's costs incurred in this motion to WAP under the Court's inherent power to enforce settlements."  Dkt. #146 at 11 (citing *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986)).  BRC Defendants do

ORDER – 19

1   not contest that an award of fees is appropriate, conceding the issue, and the Court finds such an

2   award appropriate under the circumstances.

3   <center>**IV.      CONCLUSION**</center>

4          Having reviewed King County's motion seeking to reopen the case, intervene, and for

5   permanent injunctive relief and the joint motion seeking amendment of the Consent Decree

6   entered in this matter, the briefing of the parties, the arguments made before the Court, and the

7   remainder of the record, the Court hereby finds and ORDERS that:

8   1.   King County's Motion to Reinstate the Case, Grant Leave of King County to Intervene,

9        Modify Consent Decree, and for Permanent Mandatory Injunctive Relief (Dkt. #144) is

10        DENIED.

11   2.   The Joint Motion of Plaintiff and King County to Modify Consent Decree (Dkt. #146) is

12        GRANTED.

13        a.   The Court finds and concludes that Defendants have violated Consent Decree.

14        b.   The Consent Decree (Dkt. #143) is hereby modified to require Defendants to

15             vacate operations on the Spencer Property, remove materials from the Spencer

16             Property, and replant the Spencer Property in accordance with paragraphs 7.d.,

17             e., and f. by replacing "Occupancy Date" (para. 7.d.) with the date of the Court's

18             order.

19        c.   The Consent Decree (Dkt. #143) is hereby modified to add a sentence to

20             paragraph 3, providing:  "Nothing in this Consent Decree should be interpreted

21             as authorizing BRC Defendants to operate in violation of any federal, state, or

22             local laws."

23        d.   Plaintiff's request for an award of attorneys' fees is GRANTED.   BRC

24             Defendants shall pay attorneys' fees incurred by WAP associated with filing its

ORDER – 20

joint motion to modify the Consent Decree.  No later than 14 days from the date of this Order WAP shall file a Supplemental Motion for Award of Fees and Costs, supplying this Court with detailed documentation supporting the requested fees and costs.  WAP shall note the Supplemental Motion for consideration no later than two Fridays after the motion is filed.  BRC Defendants shall file a response not to exceed six (6) pages, no later than the Monday prior to the noting date.  No reply shall be filed.  Upon the completion of briefing, the Court will take this matter under consideration without oral argument.

Dated this 1st day of December, 2020.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 21